UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

LEO SLAUGHTER,                                )
                                             )
                    Movant,                   )
                                             )
        vs.                                   )        Case No. 1:12CV00093 SNLJ
                                             )
UNITED STATES OF AMERICA,                     )
                                             )
                    Respondent.               )

## MEMORANDUM AND ORDER

This case is a motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence by

Leo Slaughter, a person in federal custody. On February 22, 2011, Slaughter was found guilty by

a jury of the offense of being a felon in possession of a firearm and, on May 23, 2011, this Court

sentenced Slaughter to the Bureau of Prisons for a term of 262 months, a sentence within the

sentencing guideline range. Slaughter's § 2255 action, which is based on several allegations of

ineffective assistance of counsel, is fully briefed and ripe for disposition.

## FACTS

### A.    The Indictment.

On May 20, 2010, a Grand Jury in the Eastern District of Missouri, Southeastern

Division, returned an Indictment against Leo Slaughter, charging him with being a previously

convicted felon in possession of two firearms that affected interstate commerce in violation of 18

U.S.C. § 922(g)(1). Slaughter was transferred from the Butler County jail pursuant to a writ in

order to face the federal charge. His Initial Appearance was before United States Magistrate

Judge Lewis M. Blanton on June 7, 2010. The Federal Public Defender's office was appointed to

represent Slaughter. Assistant Federal Defender Michael A. Skrien ("AFPD Skrien") appeared

on behalf of Slaughter to represent him at an arraignment on June 9, 2010. At that arraignment, Slaughter pled not guilty to the charge. Judge Blanton set Slaughter's pretrial motions hearing for July 1, 2010.

### B.   Pretrial Motions.

On June 23, 2010, AFPD Skrien filed a motion asking for an extension of time to file pretrial motions. That motion was granted by Judge Blanton on June 25, 2010. A new hearing date of July 9, 2010, was set by the Court.

On June 30, 2010, AFPD Skrien filed a motion to suppress evidence. The Government filed its response to that motion on July 7, 2010. On July 8, 2010, the Government filed a motion requesting that the hearing date for pretrial motions be continued, as one of its witnesses was on vacation during the time set for the hearing. On July 9, 2010, the Court granted that motion and reset the pretrial motion hearing for July 13, 2010.

On July 13, 2010, the Government presented its evidence during the evidentiary hearing on Slaughter's motion to suppress evidence. The Court set a time for each party to file memoranda and took the case under advisement.

On October 13, 2010, the Magistrate Court issued its Report and Recommendation R & R), recommending that Slaughter's Motion to Suppress Statements be denied. On October 18, 2010, Slaughter filed his Objection to the R & R. On October 28, 2010, Judge Limbaugh denied Slaughter's motion to suppress.

### C.   Slaughter's Pro-Se Motions.

1.      Motion to Dismiss Indictment for Speedy Trial violation.

On July 26, 2010, Slaughter filed a pro-se motion, seeking to dismiss the indictment for a

Speedy Trial violation and a Rule 12 violation. Slaughter included two attachments to that motion which were entitled "Motion to Suppress Witness Statements and to Dismiss Resisting Arrest Charge." On July 30, 2010, this Court directed that the Government file a response within 30 days. On October 26, 2010, Slaughter filed his motion asking that the Government respond to this motion.

On September 2, 2010, Slaughter filed another Motion to Dismiss the Indictment, alleging that his Speedy Trial rights were violated. On September 10, 2010, the Government filed its Response. On September 28, 2010, Slaughter filed a Reply to the Government's Response. On October 26, 2010, Slaughter filed a motion asking that the Government respond to the original motion. On November 3, 2010, Slaughter filed a Reply, arguing that his Speedy Trial rights were violated.

      2.       Attorney Withdrawal.

On August 6, 2010, Slaughter filed a letter with the Clerk's Office, notifying them that he had asked his appointed attorney to withdraw. A hearing was set for that notice for August 16, 2010. United States Magistrate Judge Lewis Blanton set a hearing date based on Slaughter's request. On August 16, 2010, Slaughter appeared with his attorney and withdrew his request for AFPD Skrien to withdraw.

On September 2, 2010, Slaughter filed a letter with the Court, asking that the Court order AFPD Skrien to turn over his case file to Slaughter. As part of that request, Slaughter requested that he be allowed to represent himself and that he be granted access to a law library so that he could prepare responses for filing. On September 8, 2010, Judge Blanton ordered that a hearing be held as to Slaughter's request to represent himself. After that hearing on September 13, 2010,

Judge Blanton ordered that Slaughter would be allowed to represent himself, but only in pretrial matters.

On October 5, 2010, Slaughter filed a letter with the Court, alleging that he had not received a transcript of the motion to suppress hearing or the case file.

3.      Motion to Dismiss the Indictment - Witness Perjury; Rule 12.

On August 6, 2010, Slaughter filed a pro-se "Motion to Dismiss the Indictment Because of Witness Perjury and Government Violation of Rule 12." On August 12, 2010, the Government filed its Response to that Motion. After Slaughter appeared before Judge Blanton on August 16, 2010, and agreed that he would be represented by AFPD Skrien, the Court ruled that this Motion would not be ruled on by the Court. On October 26, 2010, Slaughter filed a motion asking that the Government be ordered to respond to that Motion. On August 28, 2010, Judge Blanton issued his R & R, recommending that this motion be denied.

4.      Motion to Suppress Witness Statements - Post-hearing.

On September 17, 2010, after receiving permission to represent himself in pretrial matters, Slaughter filed a Motion to Suppress Witness Statements. That motion claimed that Officer Stewart committed perjury during the hearing on the motion to suppress. On September 23, 2010, the Government filed its Response, pointing out that Slaughter was not entitled to suppress any statement other than his own in a pretrial motion hearing. On October 13, 2010, Judge Blanton issued his Report and Recommendation (R & R), recommending that this motion be denied. On October 18, 2010, Slaughter filed his Objection to the R & R. On October 28, 2010, this Court adopted the R & R and denied Slaughter's motion to suppress.

5.      Motion to Challenge the Granting of a Continuance.

- 4 -

On September 28, 2010, Slaughter filed his motion to challenge the Court's order granting a continuance of the original pretrial motions hearing, which had already occurred at the time of this motion. On October 5, 2010, Judge Blanton issued an Order denying Slaughter's motion. On October 13, 2010, Slaughter filed a Reply to that Order.

6.    Motion to Inspect Tangibles.

On October 5, 2010, Slaughter filed a motion to inspect tangibles, which was a motion to allow him to inspect the Government's physical evidence. On October 15, 2010, Judge Blanton issued an Order directing the Government to respond to the defendant's motion on or before October 21, 2010. On October 20, 2010, the Government filed its Response to Slaughter's motion. In that Response, the Government offered to bring its exhibits to the courtroom for inspection by Slaughter. Judge Blanton set a hearing date of October 27, 2010, for a hearing on Slaughter's motion. After the hearing, Judge Blanton issued his Order requiring the Government to bring its labeled exhibits, along with an exhibit list, to the courtroom on November 10, 2010, for the defendant to inspect the Government's physical evidence.

On October 27, 2010, Slaughter filed his motion asking for additional time to determine whether he would file pretrial motions. On October 28, 2010, Judge Blanton issued an Order allowing pretrial discovery up to November 17, 2010. Another evidentiary hearing was set for November 29, 2010, for any additional pretrial matters.

7.    Motion to Determine the Probability of a Fair Trial.

On October 5, 2010, Slaughter filed a motion to determine the probability of a fair trial. On December 20, 2010, Judge Blanton issued his R & R, recommending that this motion be denied.

- 5 -

8.      Motion to Dismiss Indictment - Alleged Conspiracy to Violate His Civil Rights.

On November 10, 2010, Slaughter filed a motion to dismiss the indictment, alleging that the Government was conspiring to violate his civil rights. On December 20, 2010, Judge Blanton issued his R & R, recommending that the motion be denied.

9.      Motion to Dismiss Indictment - Alleged Violation of Rule 12.

On November 15, 2010, Slaughter filed a motion to dismiss the indictment, alleging that the Government should have provided him with copies of photographs that he observed during the time he was inspecting the Government's evidence. On November 26, 2010, the Government filed its Response to this Motion, pointing out that the Federal Rules of Criminal Procedure do not require that the Government furnish copies of the photographs to Slaughter, but that, as a courtesy to him, the Government would forward those photographs to Slaughter. Slaughter also requested a copy of the hearing transcript for the motion to suppress. The Government declined to provide a copy of that transcript to Slaughter, noting that it was not required to do so.

On November 29, 2010, during a court hearing, the Government tendered the copies of the photographs to Slaughter. At the same time, AFPD Skrien gave a copy of the suppression hearing transcript to Slaughter. On December 7, 2010, Slaughter filed a Reply to the Government's Response. On December 15, 2010, Slaughter filed a motion asking the Court to order the Government to respond to his filings. On December 20, 2010, Judge Blanton issued his R & R, recommending that this motion be denied and that the request to have the Government to respond to the motions was moot.

10.      Motion to Dismiss Indictment - Alleged False Statements by Witness.

On December 7, 2010, Slaughter filed a motion to dismiss the indictment, alleging that a

- 6 -

Government witness had made false statements during his pretrial motion hearing. On December 8, 2010, the Government filed a Response to that motion. On December 20, 2010, Judge Blanton issued his R & R, recommending that this motion be denied.

      11.     Pending motions.

On January 5 and 13, 2010, this Court issued orders adopting Judge Blanton's R & R and denying all of Slaughter's pending motions.

### C.    Trial Setting and Pretrial Conference.

On December 21, 2010, this Court set the case for jury trial on February 23, 2011. Later, the trial was reset for February 22, 2011. On February 15, 2010, the Government filed its Motion to Amend the Indictment, noting that the serial number on one of the firearms was incorrectly reported on the Indictment. The Government requested permission to strike the serial numbers from the Indictment. At the first pretrial conference on February 15, 2010, the Government's motion was taken up, and this Court asked Slaughter if he had any objection to the Indictment being amended to remove any reference to any serial number on either rifle mentioned in the Indictment. Slaughter replied that he did not object to the amendment. February 15, 2011 Pretrial Conf. Tr.; p. 8.  During that pretrial conference, this Court appointed AFPD Skrien as "standby" counsel.

During the first pretrial conference on February 15, 2011, the Government offered to allow Slaughter to stipulate that he was a previously convicted felon on the date in the Indictment. Slaughter refused to agree to that stipulation, saying that, "I'm not going to agree to any of it." February 15, 2011, Pretrial Conf. Tr.; p. 9.

On February 17, 2011, Slaughter filed an "Objecting to Matters of Error by Courts and

Government," "Objecting to a Matter of Error by the Government," and "Motion to Exert Fifth Amendment Guarantee Against Double Jeopardy." The Government filed its Responses to those motions on February 18, 2011. At the second pretrial conference on February 22, 2010, just before the start of the jury trial, this Court denied each of those motions. Trial Tr.; pp. 4 - 6. At that same time, Slaughter requested that his attorney be relieved of any duty in his case. This Court granted that request. Up to that point in time, Slaughter had been represented by counsel. Trial Tr.; pp. 9 - 11.

Also, during the pretrial conference, Slaughter requested a transcript of the testimony of Officer Stewart that was given during a preliminary hearing in state court. That hearing was recorded by Slaughter's public defender. The Government was never in possession of a transcript of this hearing. Nevertheless, Slaughter demanded that he be given a transcript of the testimony by the Government. AFPD Skrien stated that he had tried to speak with Slaughter about the transcript, but that Slaughter refused to speak with him. This Court inquired as to whether Slaughter had received a copy of the transcript from any person. Eventually, Slaughter admitted that he had received a copy of the transcript from his state public defender. Trial Tr.; pp. 7 - 9.

Slaughter requested a copy of his case file from AFPD Skrien. Skrien informed the this Court that he had already provided a copy of his file to Slaughter. Trial Tr.; p. 10.

**D.    The Trial.**

On February 22, 2011, the Indictment against Leo Slaughter was tried to a jury. The entire trial lasted only one day. A summary of the evidence presented in that case is set forth below.

David Diveley, an ATF agent, was called as a witness by the Government to establish that Slaughter was a previously convicted felon on the date of the federal offense conduct. Diveley testified that Slaughter had been convicted of the following felony offenses: (1) Tampering and burglary from Stoddard County, Missouri, in Case Number 74-CR-258; (2) Burglary from Cape Girardeau County, Missouri, in Case Number 751377; (3) Stealing and Burglary from Lincoln County, Missouri, in Case Number CR283-16FX; (4) Unlawful Use of a Weapon from New Madrid County, Missouri, in Case Number 289-37F; (5) Stealing from Pemiscot County, Missouri, in Case Number CR589-21FX; (6) Forgery from Jackson County, Missouri; (7) Unlawful Use of a Weapon and Forgery from Jackson County, Missouri, in Case Number CR92-1752; and (8) First Degree Robbery (3 Counts) and Armed Criminal Action (3 Counts) from Jackson County, Missouri, in Case Number CR93-3986. The Government introduced copies of the certified conviction records of Leo Slaughter for those convictions, which showed that Slaughter was convicted of all of those felonies before he was alleged to have possessed a firearm on January 19, 2010. Trial Tr.; pp. 51-59.

Poplar Bluff Police Officer Joshua Stewart was called as a witness to establish the facts of the crime. He testified that, at around 4:15 a.m. on January 19, 2010, he was on duty with the police department when he was dispatched to an alarm originating at the 303 Package Store in Poplar Bluff, Missouri. He and Officer Moore responded. The 303 Package Store sold alcohol, firearms, tobacco, ammunition clothing and other sporting equipment. The store was closed at this hour of the morning. Trial Tr.; pp. 60-61.

Stewart drove to the front of the store and observed that there was a flashing light going off in the store and a concrete block lying in front of the door to the business, along with a chair,

a hat and a bag of potting soil. Moore stayed behind to secure the business and Stewart drove away to try to find any people nearby who might have broken into the store. As Stewart was driving on a street nearby, he observed a person walking through a parking lot. Stewart decided to try to contact the person and stopped his patrol car. As soon Stewart stopped his patrol car, the person ran away. The man was wearing dark colored clothing, a sock hat and glasses.

Stewart tried to locate the person, but could not initially locate him.  Trial Tr.; pp. 61-64. Stewart drove back to the area near the 303 Package Store. While he was driving on Broadway, Stewart noticed a black, Chevrolet SUV pull out from a parking spot. Stewart found that to be odd in that the area did not have much traffic at that time of the day. Stewart decided to follow the SUV. The SUV went five or six blocks and turned onto Vine Street. When the vehicle turned, Stewart could see that the driver was wearing a sock hat and glasses. Stewart activated his emergency lights to pull the vehicle over. The SUV fled at high speed through several downtown Poplar Bluff streets, eventually coming to a stop in a yard. The driver jumped out of the SUV while it was still rolling and fled on foot. Stewart stopped his patrol car and gave chase. Stewart captured the driver after a short pursuit. The driver was the defendant, Leo Slaughter. The SUV contained two long guns and several packages of cigarettes. Trial Tr.; pp. 64-73.

Darren Moore, a Poplar Bluff police officer was called as a witness by the Government. Moore testified that he arrived with Officer Stewart at the 303 Package Store at the time of the report of the alarm. He observed that the front door had been forced open and that several items in the store were scattered on the floor, including firearms and cigarettes. When Stewart called out on his radio that he was in a vehicle pursuit, Moore responded to that area. Moore went to the SUV and saw cigarettes cartons in the interior of that vehicle, along with two rifles. Trial

- 10 -

Tr.; pp. 90-97. The owner of the 303 Package Store, Ben Goodwin, was notified and came to look at the two rifles. Goodwin confirmed that the two rifles had been stolen from his store. Trial Tr.; pp. 101-02, 104-109.

Poplar Bluff Police Detective Brice Colvin testified that he obtained a state search warrant to search the SUV after it was seized. During that search, Colvin recovered the two long rifles from the SUV, along with several cartons of cigarettes, Slaughter's wallet and identification and a crowbar. The two rifles were admitted into evidence during Colvin's testimony. One rifle was a Howa brand rifle. The other rifle was a Marlin rifle. Trial Tr.; pp. 110-122.

ATF Special Agent Kevin Scott Martin testified that the two firearms were manufactured in locations other than Missouri. Martin stated that the Marlin firearm was manufactured in the State of Connecticut. The Howa rifle was manufactured in the Country of Japan. Both firearms crossed a Missouri state line before their discovery in Missouri. Trial Tr.; pp. 124-130.

After the Government concluded its evidence, Slaughter elected not to testify. The jury was instructed and closing arguments were presented. After deliberation, the jury returned a verdict finding Slaughter guilty of the crime of being a previously convicted felon in possession of a firearm.

### E.     The Presentence Investigation Report.

After the verdict, this Court ordered that a Presentence Investigation Report (P.S.R.) be prepared. United States Probation Officer Paul H. Boyd prepared that report for the District Court. The P.S.R. recommended that Slaughter's base offense level be set at 34, pursuant to U.S.S.G., § 4B1.4(b)(3)(A), as Slaughter had previously been convicted of at least

three violent felonies. P.S.R., ¶ 15 - 24. The P.S.R. also reflected numerous felony and

misdemeanor convictions for Slaughter, detailed in the following paragraphs.

On September 25, 1968, Slaughter was convicted of the felonies of Stealing, Robbery and

Burglary by General Court Martial from the Department of the Army. Slaughter was sentenced

to a term of imprisonment of four years for that conviction. P.S.R., ¶ 27.

On August 21, 1969, Slaughter was convicted of Assault, by General Court Martial from

the Department of the Army. Slaughter was sentenced to a term of imprisonment of five months

and fifteen days for that conviction. P.S.R., ¶ 31.

On June 17, 1970, Slaughter was convicted of the felony of Assault in the United States

District Court of Oklahoma City, Oklahoma. Slaughter was sentenced to a term of imprisonment

of three years for this conviction. P.S.R., ¶ 35.

On September 4, 1974, Slaughter was convicted of the felonies of Tampering (4 counts)

and Burglary in the Circuit Court of Stoddard County, Missouri, in Case Number 74-CR-258.

Slaughter was sentenced to a term of imprisonment of four years for this conviction. P.S.R., ¶ 39.

On October 12, 1976, Slaughter was convicted of the felony of Second Degree Burglary

in the Circuit Court of Randolph County, Illinois. Slaughter was sentenced to a term of

imprisonment of two to six years for that conviction. P.S.R., ¶ 43.

On November 16, 1978, Slaughter was convicted of the felonies of Burglary and Stealing

in the Circuit Court of Cape Girardeau County, Missouri, in Case Number 751377. Slaughter

was sentenced to a term of imprisonment of ten years for the Burglary charge and five years for

the stealing charge, with both sentences to run concurrently. P.S.R., ¶ 47.

On February 25, 1983, Slaughter was convicted of the felony of Burglary in the Circuit

Court of Lincoln County, Missouri, in Case Number CR283-16FX. Slaughter was sentenced to a term of imprisonment of five years for this conviction. P.S.R., ¶ 51.

On April 4, 1989, Slaughter was convicted of the felony of Stealing in the Circuit Court of Pemiscot County, Missouri, in Case Number CR589-211FX. Slaughter was sentenced to a term of imprisonment of five years for this conviction. P.S.R., ¶ 55.

On April 4, 1989, Slaughter was convicted of the felony of Stealing in the Circuit Court of Pemiscot County, Missouri, in Case Number CR589-212FX. Slaughter was sentenced to a term of imprisonment of five years for this conviction.  P.S.R., ¶ 59.

On February 28, 1989, Slaughter was convicted of the felony of Unlawful Use of a Weapon in the Circuit Court of New Madrid County, Missouri, in Case Number CR289-37F. Slaughter was sentenced to a term of imprisonment of two years for this conviction. P.S.R., ¶ 63.

On June 1, 1992, Slaughter was convicted of the felony of Forgery in the Circuit Court of Jackson County, Missouri, in Case Number CR92-0639. Slaughter was sentenced to a term of imprisonment of four years for this conviction.  P.S.R., ¶ 67.

On June 1, 1992, Slaughter was convicted of the felony of Unlawful Use of a Weapon in the Circuit Court of Jackson County, Missouri, in Case Number CR92-1752. Slaughter was sentenced to a term of imprisonment of four years for this conviction.  P.S.R., ¶ 71.

On July 25, 1994, Slaughter was convicted of the felonies of Robbery (3 counts) and Armed Criminal Action (3 counts) in the Circuit Court of Jackson County, Missouri, in Case Number CR93-3986. Slaughter was sentenced to a term of imprisonment of 15 years for the Robbery charges and five years for the ACC charges, with all sentences to run concurrently. P.S.R., ¶ 75.

On December 22, 2005, Slaughter was convicted of the felony of First Degree Arson in the Circuit Court of Jackson County, Missouri, in Case Number 0516-CR07926. Slaughter was sentenced to a term of imprisonment of three years for this conviction. P.S.R., ¶ 79.

Slaughter received a total of 18 criminal history points, resulting in a criminal history category of VI. Slaughter's Sentencing Guideline range was 262 to 327 months. P.S.R., ¶ 83, 106.  No objections were filed to the P.S.R.

### F.    Sentencing Hearing.

On May 23, 2011, this Court conducted a sentencing hearing. Slaughter did not object to any of the factual findings of the P.S.R. and did not object to the Guidelines calculations based on those findings. Slaughter was sentenced to a term of imprisonment of 262 months, to be followed by a term of supervised release of three years, and a $100 special assessment.

### G.    The Appeal.

On June 1, 2011, Slaughter filed a Notice of Appeal. AFPD Skrien was originally appointed to represent Slaughter on the appeal, but he filed a motion to withdraw from that appointment, citing Slaughter's statements of record that he did not want AFPD Skrien to assist him in the case. That motion was granted. The Court of Appeals directed that Slaughter proceed as a pro-se appeal and that he was responsible for filing his own briefs in the appeal. Slaughter did not file any brief and his appeal was dismissed for failure to prosecute on January 20, 2012.

### H.    Petition for Post-Conviction Relief Pursuant to § 2255.

On June 8, 2012, Slaughter filed his Petition under 28 U.S.C., § 2255, asking that this Court set aside Slaughter's conviction and sentence. Slaughter set out twelve grounds for relief.

## APPLICABLE LAW

### A.    NEED FOR EVIDENTIARY HEARING AND BURDEN OF PROOF

28 U.S.C. §2255 provides, in pertinent part:

> Unless the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon.

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District

Court states:

> The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits in the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

When a petition is brought under Section 2255, the petitioner bears the burden of

establishing the need for an evidentiary hearing. In determining whether petitioner is entitled to

an evidentiary hearing the court must take many of petitioner's factual averments as true, but the

court need not give weight to conclusory allegations, self interest and characterizations,

discredited inventions, or opprobrious epithets. *United States v. McGill*, 11 F.3d 223, 225 (1st

Cir. 1993). A hearing is unnecessary when a Section 2255 motion (1) is inadequate on its face,

or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and the

records of the case. *Id*., at 225-6. See also *United States v. Robinson*, 64 F.3d 403 (8th Cir. 1995)

*Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995).

When all the information necessary for the court to make a decision with regard to claims

raised in a 2255 motion is included in the record, there is no need for an evidentiary hearing.

*Rogers v. United States*, 1 F.3d 697, 699 (8th Cir. 1993). An evidentiary hearing is unnecessary

where the files and records conclusively show petitioner is not entitled to relief. *United States v. Schmitz*, 887 F.2d 843, 844 (8th Cir. 1989); *Dall v. United States*, 957 F.2d 571, 573 (8th Cir. 1992).

### B.   INEFFECTIVE ASSISTANCE OF COUNSEL

To prevail on a claim alleging ineffective assistance of counsel, the movant must satisfy the two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). Under *Strickland*, the movant must first show that the counsel's performance was deficient. 466 U.S. at 687. This requires the movant to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. Secondly, the movant must demonstrate that the deficient performance prejudiced the defense so as "to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. The movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

The Eighth Circuit has described the two-fold test as follows: (1) counsel's representation fell below an objective standard of reasonableness; and (2) but for this ineffective assistance, there is a reasonable probability that the outcome of the trial would have been different. *Rogers v. United States*, 1 F.3d 697, 700 (8th Cir. 1993). More recently the Eighth Circuit has described the *Strickland* test as follows: "Whether counsel's performance was in fact deficient and, if so, whether the defendant was prejudiced by the inadequate representation. If we can answer 'no' to either question, then we need not address the other part of the test." *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000).

When evaluating counsel's performance, the court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Counsel's performance is considered objectively, and gauged "whether it was reasonable 'under prevailing professional norms' and 'considering all the circumstances.'" *Fields*, 201 F.3d at 1027, quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064-65. Counsel's challenged conduct is viewed as of the time of his representation. "And we avoid making judgments based on hindsight." *Fields*, 201 F.3d at 1027. A reviewing court's "scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

## DISCUSSION

**Ground one. Defective Indictment.**

Slaughter's entire statement regarding this issue was "A weapon I was indicted for is not the weapon I was convicted for." Slaughter does not indicate why this statement would be correct or how it affected his case. The Government is assuming that Slaughter is complaining over the mistaken serial number on *one* of the two firearms that was mentioned in the Indictment. With that assumption, the Government offers the following in response.

Slaughter's Indictment charged that, on January 19, 2010, he possessed two firearms. One of those firearms was alleged to be a Howa, .308 caliber rifle, bearing serial number B148214. Slaughter does not appear to have any complaint regarding this firearm. The second firearm was listed as a Marlin, .30-30 caliber rifle, bearing serial number 92037821. That serial number came from an ATF interstate nexus report, dated May 17, 2010. In that report, ATF Special Agent Kevin S. Martin identified both firearms by make, caliber and serial number. In

the case of the Marlin rifle, Agent Martin used the wrong serial number. As he testified, he took

the serial number from a report given by the owner. Trial Tr.; p. 129.  The mistake was

discovered before trial. The correct serial number for the Marlin rifle was 92011212.  Trial

Exhibit 14.  The Government filed a motion to strike the reference to a serial number from the

Indictment on the basis that it wasn't needed as an element of the offense.  Slaughter agreed to

the motion and the Indictment was amended by this Court's Order. Trial Tr.; p. 8.  The

transcript of Slaughter's consent is set forth for the pretrial conference on February 15, 2011, as

follows:

> The Court:     I also have a document that was just filed today, Government's
>                Motion to Amend Indictment. Did you get a copy of this?
>
> Slaughter:     Yes, I did.
>
> The Court:     Do you want to address that?
>
> Sorrell:       I can, Your Honor. I'm not sure if Mr. Slaughter wants to take it up
>                today or at a later date to give him some time, but basically we've
>                discovered, and we had for some time, and I've informed Mr.
>                Skrien of this, that one of the firearm's serial number was
>                misreported in the indictment. That's a clerical mistake that can be
>                taken care of just by simply striking the reference to the serial
>                numbers in the indictment. And because possession of the gun is
>                the element of the offense, not the serial number, and so that's the
>                relief that we're asking for just so there's no confusion.
>
> The Court:     All right. Any objection to the motion to amend the indictment?
>
> Slaughter:     No, sir, I don't.
>
> The Court:     All right. Motion is granted.

February 15, 2011, Pretrial Conference

When the jury was instructed at the close of the case, Jury Instruction Number 9 informed

them of the elements of the offense.  Exhibit 1, attached to this Response.  That instruction allowed the jury to convict Slaughter if they found that "the defendant thereafter knowingly possessed a firearm, that is a Marlin, .30-30 caliber rifle or a Howa, .308 caliber rifle." This second element of the offense does not list any serial number for either firearm, in accordance with the Government's Motion to Strike the serial numbers. Slaughter was convicted of possessing one of two different firearms. The serial numbers do not matter now and did not matter then. Their presence or absence is immaterial to the question of whether Slaughter actually possessed a firearm.

The Eighth Circuit Court of Appeals has had an occasion to decide the issue of what process is due a defendant when the serial number on the Indictment is incorrect. In *United States v. Neff*, 525 F.2d 361 (8th Cir. 1975), the serial number listed on the Indictment for a firearm was incorrect. The district court allowed the serial number to be amended for the jury instructions to the correct number that was actually on the firearm. The Indictment was not resubmitted to a grand jury for correction, but was amended by the court's order. The *Neff* Appellate Court agreed that the district court did not commit error, holding that ". . . the change of a weapon's serial number in this indictment does not require dismissal. Correction of a typographical error which goes to the form rather than the substance of the indictment is permissible." *Id*., at 363. Other circuits have agreed that an incorrect serial number on the indictment is not a defect requiring dismissal. *See United States v. Jackson*, 596 F.3d 236, 244-45 (5th Cir. 2010); *United States v. Morrow*, 925 F.2d 779, 781 (4th Cir. 1991); *United States v. Field*, 875 F.2d 130, 133-34 (7th Cir. 1989). An amendment to the indictment is permissible when the defendant's rights are not affected and he is adequately apprised of the charges against

- 19 -

him so that he is protected against surprise at trial. *Jackson,* 596 F.3d at 245.

Slaughter was not surprised by the elimination of the serial number from the Indictment as to the one firearm; in fact, Slaughter consented to that amendment of the Indictment. The law of this Circuit would have permitted the amendment of the Indictment to correct the serial number on the Marlin rifle, even without Slaughter's consent.

This Court also notes that Slaughter was accused of possessing *two* firearms; not just one, and that a conviction on either would result in the same sentence. Slaughter does not complain that there was any error in his conviction for the second firearm. Therefore, he has not shown that he was prejudiced or harmed by the alteration of the serial number on the Marlin firearm. Without showing that prejudice, his claim on this issue fails.

**Ground two. Prosecutorial Misconduct.**

In this ground, Slaughter complains that the Government's attorney "testified before a grand jury proceeding about the material fact of evidence which didn't exist." Slaughter contends that ATF SA Kevin S. Martin presented a report to the grand jury about a non-existent firearm and that the report should not have been amended to reflect the correct serial number. Slaughter asserts that the ATF interstate nexus report was "tampered with," by allowing Agent Martin to make a new report with the correct serial number for the Marlin rifle. Slaughter concludes with the statement that "[t]he prosecutor's actions prejudiced my substantial constitutional rights." Slaughter appears to contend that he had a Constitutional right to be prosecuted only for a misidentified firearm. As the cases reported above demonstrate, that contention is not accurate.

The cases cited in Ground One above stand for the proposition that the District Court may

amend the Indictment for typographical or clerical errors without affecting the validity of the

Indictment. There is no need to repeat those cases here nor the legal reasoning showing

that Slaughter's contention is incorrect.

Furthermore, since Slaughter consented to the amendment of the Indictment by striking

the reference to any serial numbers, he cannot complain of error here. The evidence that Agent

Martin originally wrote a report with an incorrect serial number, and later corrected that report,

was presented to the jury. Slaughter tried to make an issue of that change, but could not convince

the jury that the mistaken serial number had any affect as to his guilt.  Trial Tr.; pp. 130-132.

There was no "tampering" with the evidence by the agent. The jury was properly instructed that

Slaughter could be found guilty by his possession of either of two firearms. The mistaken serial

numbers have no bearing on Slaughter's guilt or the validity of his conviction.

**Ground three. Prosecutorial Misconduct.**

Slaughter contends that the Government withheld evidence improperly from him during

the pendency of his case. He complains of two areas of withheld evidence: (1) that the

Government failed to turn over a transcript of the state preliminary hearing of Officer Josh

Stewart; and (2) that the Government improperly withheld production of the photographs of the

SUV until November 29, 2010, approximately two months before his trial. Slaughter is incorrect

in his argument that the Government had an obligation to provide either of those items.

As to the state preliminary hearing transcript, the Government has never had, and does

not now have, that transcript. The Government could never have provided that transcript to

Slaughter.  Furthermore, the Government was not required to provide that transcript to Slaughter.

Finally, at the last pretrial conference, Slaughter admitted that he already had a copy of the

transcript that he received from his state public defender.  Trial Tr.; p. 9. He can show no violation of any Rule requiring the Government to provide a copy of that transcript and can show no prejudice or harm resulting from not receiving the exact same transcript from the Government as well as his own counsel. Similarly, the rules for discovery do not require that the Government ever provide a copy of any photographs to Slaughter, so he has no valid complaint as to that issue either.

The preliminary hearing transcript issue arises because Slaughter was charged first in state court in Butler County, Missouri, with felony charges arising out of the burglary and firearms theft. The state prosecutor presented testimony during a preliminary hearing, including the testimony of Officer Josh Stewart. Court reporters typically do not report state preliminary hearings, and Slaughter's case, in particular, was not reported or recorded by the state court. However, as a practice of his office, the state public defender representing Slaughter used his own personal recorder to record the proceedings. After the hearing, the public defenders office listened to the recording and made their own transcript of the hearing. They provided a copy of that transcript to Slaughter. Of course, they did not provide it to the state or to the federal Government. The Government did not have the transcript, nor did it have access to it. The Government cannot possibly have provided such a transcript to Slaughter.

Moreover, Slaughter is operating under a fundamental mistake as to what is required of the Government in discovery. There is absolutely no requirement that the Government provide such a transcript to him, even if the Government had such a transcript.

The first rule that requires consideration as to this issue is Federal Rule of Criminal Procedure 12(b)(4). Part A of that rule states as follows:

A.    At the Government's Discretion. At the arraignment or as soon afterward

as practical, the government may notify the defendant of its intent to use

specified evidence at trial in order to afford the defendant an opportunity

to object before trial under Rule 12(b)(3)(C) (by a motion to suppress).

The transcript of the hearing is not objectionable by a motion to suppress, so this rule

does not assist Slaughter. Part B of Fed.R.Crim.Pro. 12(b)(4) states:

B.    At the Defendant's Request. At the arraignment or as soon afterward as

practical, the defendant may, in order to have an opportunity to move

to suppress evidence under Rule 12(b)(3)(C), request notice of the

government's intent to use (in its evidence-in-chief at trial) any evidence

that the defendant may be entitled to discover under Rule 16.

Slaughter had an opportunity to request certain discovery, but only that discovery that

is *required* by Rule 16. Rule 16 requires the following types of information be disclosed to a

defendant upon his request: (1) the defendant's own oral, written or recorded statement made

while subject to interrogation and while in custody; (2) the defendant's prior record; (3)

inspection of documents and objects; (4) reports of examinations and tests; and (5) reports

provided by expert witnesses. The only subsection of this rule that remotely applies to this issue

is (3) the inspection of documents and objects. That portion of the rule states:

E.    Documents and Objects. Upon a defendant's request, the government must

permit the defendant to inspect and to copy or photograph books, papers,

documents, data, photographs, tangible objects, buildings or places, or

copies or portions of any of these items, if the item is within the

government's possession, custody, or control and:

(i)      the item is material to preparing the defense;

(ii)     the government intends to use the item in its case-in-chief at trial; or

(iii)    the item was obtained from or belongs to the defendant.

Slaughter's contention fails significant parts of Rule 16's requirements. First, the Rule only requires his *inspection* of those items, and does not require the Government to produce copies for his use. Second, the Government did not intend to use the preliminary hearing transcript as evidence in its case-in-chief. Third, the Government never possessed the transcript and had no ability to provide it to Slaughter. Slaughter was given the opportunity to inspect the Government's exhibits, which he did.

As to the photographs, all the Government was required to do was make its exhibits available for inspection by the defendant. The Government was never obligated to provide copies of those photographs to Slaughter, but it did. Slaughter does not have a valid complaint that the Government failed in its obligations under the Federal Rules of Criminal Procedure.

Judge Blanton issued his order that both parties file requests for discovery to the opposing side by June 14, 2010. Slaughter, through his attorney, filed a request for discovery on June 11, 2010. A part of that discovery asked:

Accordingly, Defendant hereby requests that the Government provide Defendant with copies or photographs of the following materials *or, in the alternative, that the Government to disclose to Defendant and make available for inspection, copying, or photographing*, the following materials:

. . .

E.     All books, papers, documents, photographs, or buildings or places

which are within the possession, custody or control of the Government,

and which are material to the preparation of Defendant's defense

or are intended for use by the Government as evidence in chief

at the trial, or were obtained from or belong to the Defendant.

(Emphasis furnished)

Defendant's discovery request, June 16, 2011, Document 16.

The Government, in its response, listed the rifles, the items seized from the SUV and:

(d)     Photographs taken of the vehicle and its interior.

By its response, the Government provided notice to the Defendant of its possession of photographs of the vehicle and informed the Defendant that they would be available for his inspection. The Government never was obligated to provide Slaughter with copies of the photographs. Slaughter simply is not aware of what the rules require. The Government fully complied with its discovery obligations.

The Government is also required to turn over exculpatory materials to the defendant pursuant to the holding of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963). According to *Brady*, the failure of the prosecution to turn over evidence favorable to the accused violates the defendant's right to due process as set forth in the Fourteenth Amendment. *Brady*, at 86. In order to prove a *Brady* violation, the defendant must show: (1) that the prosecution suppressed the evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to guilt or punishment. *United States v. Duke*, 50 F.3d 571, 577 (8th Cir. 1995). Evidence is material under *Brady* only if there is a reasonable probability that, had the evidence been

- 25 -

disclosed to the defense, the result of the proceeding would have been different. *Id.* Reasonable probability is defined as a probability sufficient to undermine confidence in the outcome. *Id.* There is no duty to disclose evidence that is (1) neutral, speculative or inculpatory, (2) available to the defense from other sources, (3) not in the possession of the prosecutor, or (4) over which the prosecutor has no actual or constructive control. *Id.* The rule of *Brady* is limited to the discovery, after trial, of information which was known to the prosecution but not to the defense. *United States v. Kime*, 99 F.3d 870, 882 (8th Cir. 1996).

There was no *Brady* violation in Slaughter's case. The preliminary hearing transcript was not available to the Government so it is not covered by *Brady.* The photographs were given to Slaughter before the trial, so *Brady* does not apply to them, even if they were exculpatory. There was no due process violation.

The Jencks Act requires the presentation of any statements made by a government witness after the witness has testified on direct examination for the Government. United States v. Jones, 150 F.3d 473, 479 (8th Cir., 1998). The Government is not required to make earlier disclosure of these statements.

The Jencks Act defines what a "statement" is, as follows:

(1)     a written statement made by said witness and signed or otherwise adopted by him;

(2)     a stenographic, mechanical, electrical, or other recording, or a transcript thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

(3)     a statement, however taken or recorded, or a transcription thereof, if any, made

by said witness to a grand jury.

Title 18, United States Code, Section 3500(e).

Neither of Slaughter's complaints involves a "statement" of a witness as defined by the Act, so the Jencks Act is not involved in this discussion. Furthermore, all summaries of witness statements were turned over to Slaughter's attorney at the beginning of this case as part of the ATF investigative file. Slaughter does not have a valid discovery complaint.

In the last paragraph of this issue, Slaughter contends that "the prosecutor never responded to pro se motion (document # 71) that Judge Blanton denied without a rebuttal." This statement does not include any information that would indicate how Slaughter's rights were violated or how it affected his trial. The Government is without information sufficient to respond to this unsupported allegation, which does not even cite an error by the Court or the Government. This Court itself informed Slaughter that the Government was not required to respond to each and every filing by Slaughter:

> The Court:    It's also apparent to this Court that the defendant is under a
> fundamental misperception that the Government is required
> to file responses to every motion that the defendant files,
> and that's simply not the case.

Trial Tr.; pp. 4, 5.

Evidently, Slaughter is still under the mistaken impression that the Government is required to respond to his filings. It is evident that there is no error here, let alone any Constitutional error, in the Government deciding not to answer Slaughter's court filings.

**Ground four. Ineffective Assistance of Counsel.**

Slaughter contends that his appointed attorney, AFPD Skrien, "prejudiced my entire

- 27 -

defense and the appeal phase." Slaughter is laboring under the impression that he can belittle his appointed counsel, fail to speak to or cooperate with him, demand the right to represent himself, demand that his appointed counsel's representation be "terminated," and then complain about his attorney being ineffective. Slaughter's choice to ignore his appointed counsel undercuts the validity of his complaints.

The Court:    All right. The Court observes that the Public Defender Michael Skrien was previously appointed to represent the defendant in this case, but that Judge Blanton, who is the U. S. Magistrate handling pretrial motions, has allowed Mr. Slaughter to represent himself for that purpose up to this time, which is the time of trial.

Now, Mr. Skrien, have you been stand-by counsel during that time?

Skrien:    I had the understanding that I was stand-by counsel, but since then he has cut off communications. I have been present at all the court appearances.

February 15, 2011, Pretrial conf.; p. 2.

The Court:    Now, are you sure - - so what's your pleasure now? Do you want a lawyer to represent you in this trial or are you wanting to represent yourself?

Slaughter:    Your Honor, I've been stumbling along here for the last six months by myself, and I see no reason to change that.

February 15, 2011, Pretrial conf.; p. 3.

The Court:    Well, so are you telling the Court you want to give up your right to have a lawyer represent you in the case then?

Slaughter:    Especially this attorney, Mr. Skrien. I really cannot work with Mr. Skrien.

February 15, 2011, Pretrial conf.; p. 4.

The Court:    Mr. Skrien, has everything that's available been given to the

- 28 -

defendant on that matter?

Skrien:      Yes, Your Honor. That's my understanding. I have - - I have
             requested to speak with Mr. Slaughter to ensure that that is the
             case, but he's refused to speak with me.

February 22, 2011, Trial Tr.; p. 7.

Slaughter:   My next pretrial matter is, I'm going to again ask the Court to
             terminate Mr. Skrien's connection to this case because all he's
             done since he's been in this case is hinder my preparations for this
             trial.

February 22, 2011, Trial Tr.; p. 9.

Slaughter:   But again, I'd like to have you order him away from this case
             because he's not doing anything to help me in this case.

The Court:   Well, he is - - you won't even talk to him, Mr. Slaughter. So, if
             that's what you want, I won't even order standby counsel and he
             can be excused. But - -

Slaughter:   Terminated.

February 22, 2011, Trial Tr.; p. 11.

A defendant cannot base a claim of inadequate representation upon his refusal to

cooperate with appointed counsel. *Shaw v. United States*, 403 F.2d 528, 529 (8th Cir. 1968). The

record clearly demonstrates that Slaughter refused to cooperate with his appointed lawyer. His

claim on this issue is without merit.

Slaughter decided, all on his own, to cut off communications with AFPD Skrien and

represent himself. Now, he complains that AFPD Skrien poisoned his trial and appeal.

Slaughter's argument is difficult to comprehend, since Slaughter has represented himself (with

stand-by counsel) since the pretrial motions stage. AFPD Skrien could not possibly have

affected his case in either the pretrial, trial or appellate stages. Judge Blanton even went so far as

- 29 -

to allow Slaughter to have his own motion to suppress and the ability to have another hearing on his motion after reviewing the Government's evidence.  Judge Blanton Orders; Documents 64, 68.  Slaughter did not file any further pretrial motions and did not contest the Government's evidence in a later hearing. Slaughter cannot validly complain that AFPD Skrien affected the outcome of the case, either in pretrial motions, the trial or the appeal, since Slaughter insisted on conducting his own defense and refusing to speak with AFPD Skrien. Slaughter is simply reaping the rewards of his ill-advised decision to "terminate" Skrien's representation and be his own lawyer. AFPD Skrien could not have been ineffective during any part of this case, since Slaughter was his own lawyer and fully responsible for the results obtained after each hearing and the trial. It appears that Slaughter was not particularly effective in that representation, but his appointed lawyer was. There is no merit to Slaughter's contentions.

**Ground five. Denied Access to the Court.**

Slaughter complains that he did not have access to a law library in order to prepare for his defense. Slaughter states that he asked for access to a law library, but that request was never granted. It is true, that on at least two occasions, Slaughter asked for access to a law library. September 2, 2010, letter to Court; February 15, 2011, Pretrial conf.; p. 10.  However, at those times, Slaughter had stand-by counsel. When a defendant has stand-by counsel, he does not have a right to access to a law library. Slaughter's stand-by counsel was relieved just before the jury trial began, at Slaughter's request.  Trial Tr.; p. 11.  After that request was granted, Slaughter did not make any further requests for access to a law library during his trial or appeal.

Pro-se defendants have a right of access to adequate law libraries or adequate assistance from persons trained in the law. *United States v. Knox*, 950 F.2d 516, 519 (8th Cir. 1991). But a

pretrial detainee has no abstract right to law libraries or legal assistance; he must demonstrate that the alleged shortcomings hindered his efforts to pursue a legal claim. *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174 (1996). In Slaughter's case, he merely makes an abstract claim that he was not afforded access to a law library. Slaughter does not state what or how such access would have assisted him. He does not point out exactly what he would have gained from such access. This failure to state a particular reason that he needed access to a law library is fatal to his claim, as well as the fact that Slaughter had stand-by counsel.

A similar claim was made in *United States v. Kind*, 194 F.3d 900 (8th Cir. 1999). Kind was appointed counsel in his criminal case, but elected to represent himself. The district court then appointed stand-by counsel to assist Kind. The Eighth Circuit held that the appointment of counsel was sufficient and that Kind was not entitled to access to a law library. As that Court stated:

> . . . it is clear that the district court carefully protected Kind's right to a fair
>
> trial after he foolishly decided to represent himself. The right to due process
>
> requires no more.

*Id*., at 905.

In Slaughter's case, this Court required AFPD Skrien to remain in the case as stand-by counsel up to the point where Slaughter demanded that Skrien's representation be "terminated." That "termination" occurred just before the jury was called in for voir dire. After that, Slaughter never requested access to a law library. This Court protected Slaughter's constitutional rights of access to the courts by appointing stand-by counsel. This Court could not, and should not, require Slaughter to cooperate with that counsel. Slaughter's decision

to refuse to cooperate with his appointed lawyer was a bad decision on his part, but it was his

right to do so.

Any error here is simply the fault of Slaughter and does not represent any denial of any

right afforded to Slaughter. Slaughter had the right of access to the courts through his court-

appointed counsel. He merely failed to take advantage of that right. He does not have the right

to both a stand-by lawyer *and* access to a law library. And it is not his choice of which remedy

the Court sees fit to give him. Slaughter would have been well-advised to have asked his standby

counsel for advise. But his failure to do so does not result in error by this Court or a remedy

in this Petition.

**Ground six. Police Bias and Prejudice.**

In this ground, Slaughter recounted the testimony of Officer Josh Stewart, who testified

that he recommends a bond amount for persons that he arrests. Slaughter states, "Such is not part

of the duty of a police officer." Slaughter does not state how, or why, this issue has any

connection with his verdict, his sentence or the appeal. He leaves it to this Court to sift

through all the hearings, motions, arguments and other matters of record to determine how this

testimony had any effect on Slaughter's conviction or sentence. Slaughter also failed to mention

that it was his own cross-examination that brought this matter to light in the first place. Trial

Tr.; pp. 82-83. Why Slaughter would ask the officer questions about the state bond practices at

his jury trial is a mystery to this Court, but Slaughter must have had his reasons for doing

so. Slaughter's failure to allege facts that show how he was prejudiced is fatal to this claim.

Slaughter's failure to allege specific facts to support the conclusions in his § 2255 petition

was faced in *United States v. Johnson*, 582 F.2d 1186 (8th Cir. 1978). Johnson filed his § 2255

petition, alleging that his counsel failed to investigate the circumstances of his arrest, the crime itself, his hospitalization, and instead relied on the information furnished to him by the prosecution. *Id.*, at 1188. The *Johnson* Court noted Johnson's failure to allege facts to support his claim:

> Such claimed failure must, however, be supported by factual allegations, such as the failure of counsel to interview witnesses, to seek factual information in the possession of the government, or to otherwise explore all avenues leading to facts relevant to guilt and degree of guilt or penalty. (Citation omitted.) In the absence of any such specific allegations, Johnson's claim for relief must be denied.

*Id.*

A similar issue arose in *Parton v. Wyrick*, 614 F.2d 154 (8th Cir. 1980), a federal habeas case arising out of a Missouri conviction of the defendant for rape. Parton filed his habeas petition alleging that his attorney was ineffective for failing to conduct a scientific investigation into certain items of evidence. Parton did not allege exactly how his attorney erred, or what the investigation would reveal or how that lack of investigation caused him to suffer some prejudice in the result. The Eighth Circuit affirmed the denial of Parton's petition, noting that "[w]hen, as in this case, the habeas claim goes to counsel's trial strategy or failure to investigate facts surrounding the crime, the petitioner must allege specific incompetence and prejudice resulting therefrom." *Id.*, at 158.

Slaughter has failed to provide any factual support for his claim, and even fails to state how this issue affected his case. As such, Slaughter's claim may be dismissed on that ground alone.

**Ground seven. Denial of Appellate Rights.**

This issue has the exact same defect as the previous one; Slaughter makes a statement, but does not set forth any claim that the issue affected his conviction or sentence. Slaughter attached copies of an order from the Eighth Circuit Court of Appeals allowing his appointed attorney to withdraw, and other orders declining to appoint him another attorney. Slaughter concludes by stating, "And I have not waived my right to counsel." The Government assumes that Slaughter is making some kind of argument that the Eighth Circuit Court of Appeals violated his right to counsel. This Court is not aware that it has the authority to rule on this issue; it seems that it would have been more appropriately been addressed before the Court of Appeals. However, this Court will address the general issue of whether Slaughter's actions had the effect of operating as a waiver of his right to counsel, even at the appellate stage.

Slaughter's actions had the direct effect of waiving his right to counsel. His actions in refusing to cooperate with appointed counsel, even to the point of not speaking with or meeting with that counsel, operate as a waiver of his right to appointed counsel. A persistent, unreasonable demand for dismissal of counsel and appointment of new counsel is the functional equivalent of a knowing and voluntary waiver of counsel. *United States v. Taylor*, 652 F.3d 905, 909 (8th Cir. 2011). Slaughter's unreasonable refusal to cooperate with his appointed counsel was, in effect, a knowing and voluntary waiver of his right to counsel. Combined with his request to represent himself, Slaughter cannot complain that his rights were violated by the absence of counsel. And finally, Slaughter does not set forth any grounds that the appellate court orders were somehow invalid.

This claim may be dismissed upon three separate grounds; first, because Slaughter has failed to provide any issue related to a wrongful result at trial, sentencing or appeal, second,

because his actions caused a waiver of his right to counsel; and third, because this Court

has no authority to decide any issue related to Slaughter's right to counsel when denied by the

Court of Appeals. There is no cognizable § 2255 issue in this portion of Slaughter's Petition.

**Ground eight. Denial of Case file.**

Slaughter asserts that he did not have his case file from AFPD Skrien's office. This

matter was resolved during a pretrial conference:

| | |
|---|---|
| The Court: | Okay. He says that he's asked you for materials in the case file and that you haven't given it to him. |
| Slaughter: | No, I asked for the case file, not materials in it. I want the case file. Because there's something going on with this case and I don't have any idea what's happening in my own case. |
| Skrien: | Judge, I'll represent to the Court that I have provided him with everything that he's entitled to from our file. We went through that here the day that he reviewed the pictures and the evidence. If I - - he can tell me what he's looking for, I can look and see if he has it - - if he doesn't have it. |
| The Court: | But you have given him basically the entire contents of your file, I take it? |
| Skrien: | Yes, Your Honor. It's our philosophy that the - - it's the client's file. |
| The Court: | All right. Well, Mr. Slaughter, you know, I have to say I believe Mr. Skrien. I don't believe you. So - - |

Trial Tr.; p. 10.

The exchange on the record reveals what Slaughter desired; he wanted the actual file from

his attorney's office. He wasn't satisfied with a copy of the file; he wanted AFPD Skrien to turn

over their original file. Slaughter doesn't have the right to the original file; he only has a right to

copies of those materials. AFPD Skrien attempted to make sure that Slaughter had all the

- 35 -

materials in the file, but Slaughter would not cooperate to confirm that. Slaughter had a copy of his attorney's case file; that is all he is entitled to.

Furthermore, even to this day, Slaughter has not stated that he was harmed by the omission of any document or thing from the copy of the file that he received. He merely makes a general claim that he didn't get the actual case file and leaves it to this Court to determine how this issue could have affected his case. Slaughter's failure to connect a perceived error to a bad result is fatal to this claim.  This ground shall be dismissed for Slaughter's failure to provide any facts to support it.

**Ground nine. Judicial Bias.**

Slaughter states that Judge Blanton instructed Slaughter to file his objections to the two Report and Recommendations within fourteen days. Slaughter states that he filed objections, but that the Government did not file a response. He continues by stating that his case was moved to trial and that this Court's ruling came after the trial setting. Slaughter appears to contend that this Court should have ruled on his objections before setting the matter for trial and that the Government was required to file a response to Slaughter's objections. Neither position has merit. The Government was simply not required to respond to Slaughter's filings unless this Court ordered otherwise. And the trial setting, in relation to the ruling on Slaughter's objections, is not relevant to the issue of Slaughter's conviction or sentence. Slaughter has not provided any reason to believe that a different court procedure would have affected the outcome of his case.

Slaughter also complains as to Judge Blanton's ruling that Officer Stewart had an alternate basis to stop his SUV, as the dark tinting alone would have provided adequate reason

for the stop. Judge Blanton cited the Missouri statute in his ruling. Slaughter also states that

Judge Blanton set out several reasons why Officer Stewart would make a bond recommendation

in the state case. Slaughter does not set out any reasons why these rulings would show "judicial

bias" or why the rulings affected the outcome of his case. Since Slaughter did not provide those

reasons, this claim shall be dismissed.

**Ground ten. Discovery Violation.**

Slaughter contends in this issue that the Government withheld exculpatory and favorable

evidence and that it failed to comply with the Court's Order for discovery issued in June, 2010.

The "evidence" in this issue is the public defender's transcript of a state preliminary hearing and

photographs of his vehicle. Slaughter is mistaken in that the Government did not have an

obligation to provide either item to the defendant. The Government has never had a copy of the

transcript and Slaughter already had a copy from his state public defender. The photographs

were provided for Slaughter to inspect before trial and were actually provided to him before trial.

This issue was fully discussed in Ground Three above. This Court will not repeat those

arguments, except to note that neither the Court's Order, the Rules, *Brady*, nor the Jencks Act

require the production of either of those items to Slaughter. This point has no merit.

**Ground eleven. Witness Perjury.**

In this ground, Slaughter disagrees with Judge Blanton's factual conclusion that Officer

Stewart could see into the SUV before the car chase and observe that the driver was wearing

glasses and a sock hat. Slaughter states, "The dark tinting makes that impossible." However, the

Government introduced a photograph which clearly demonstrated that the officer could see

through the back window. Exhibit 13-KK, attached to this Response as Exhibit 2, shows the

SUV in the police bay after Slaughter's arrest. The vehicle was photographed from the front. The photograph shows that a person can look through both the front glass and the rear glass and see the windows on the squad bay door behind the SUV by looking directly through both windows. In spite of Slaughter's claim that it would have been impossible for Officer Stewart to see through the windows of the SUV, Exhibit 2 clearly shows that it was not only possible, but reasonable.

Slaughter makes a factual claim that the windows were too darkly tinted to see through, but provides no proof to that effect, other than his claim. There is no factual support for Slaughter's contention.

The substance of Slaughter's claim is that Judge Blanton erred in crediting the testimony of Officer Stewart. That credibility finding has already been independently confirmed by this Court, when it adopted the Report and Recommendation and denied Slaughter's motion to suppress. Both the Magistrate Court and this Court were in a position to watch the witness testify about this exact issue.  Moreover, the jury certainly found Officer Stewart to be credible, or otherwise they would not have returned a guilty verdict. Slaughter's contention is at best, simply sour grapes at obtaining an adverse verdict.

**Ground twelve. Double Jeopardy Violation.**

Slaughter's last issue is that his rights against double jeopardy were violated. This Court has previously ruled otherwise, with this Court finding that his original motion was "frivolous." Trial Tr.; p. 5, 11.

Slaughter was originally prosecuted in the state court system for the burglary and the theft of the two firearms. That case was dismissed after Slaughter's arrest on the federal charge.

- 38 -

Evidently, Slaughter believes that the state charge operates as a Double Jeopardy bar to federal prosecution. He is mistaken.

"The dual sovereignty doctrine provides that although a defendant may not be prosecuted twice by the same sovereign for the same acts, a subsequent prosecution by a separate sovereign does not violate the Constitution." *United States v. Leathers*, 354 F.3d 955, 959-60 (8th Cir. 2004). "The State of Missouri and the United States are separate sovereigns in our federal system and for purposes of the Double Jeopardy Clause." *Id.*

Slaughter's separate prosecution by the federal government, which is a separate sovereign from the state government, is not a violation of the Double Jeopardy Clause. This point has no merit.

## CONCLUSION

Slaughter is currently reaping the benefits of several bad choices that he made, all of which began with his mistake in deciding to burglarize the 303 Package Store. He compounded that error by deciding to take firearms, conduct that involved a federal offense. Slaughter continued his bad choices by fleeing from the officers in a reckless manner and being captured with the two firearms that he had stolen. When charged with the federal offense, Slaughter decided to contest each and every issue and file numerous pro-se motions rather than attempt to admit his conduct by a guilty plea. He refused to speak with or cooperate with his appointed counsel, another decision that turned out poorly for Slaughter. Slaughter decided to represent himself at a jury trial in spite of the warnings and advice from this Court not to do so and in spite of his complete lack of training or ability to competently conduct his defense. Finally, Slaughter so alienated his appointed counsel that his attorney was allowed to withdraw from his appeal,

eventually resulting in the dismissal of the appeal since Slaughter could not prepare a brief. Slaughter's history in this case is nothing but a litany of bad choices, all of which he knowingly made. If Slaughter wants to assign blame for his conviction and sentence, he should realize that the fault is solely his.

Slaughter is only entitled to an evidentiary hearing when the facts alleged, if true, would entitle him to relief. *Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996). However, a claim may be dismissed without an evidentiary hearing if the claim is inadequate on its face. *Id*. None of Slaughter's claims entitle him to relief. The evidence convicting Slaughter was overwhelming. Slaughter has not shown any factual dispute requiring a hearing, nor has he shown that he was prejudiced by his attorney's efforts or this Court's rulings. Slaughter is not entitled to an evidentiary hearing on his claims.

For the foregoing reasons, Slaughter's § 2255 motion is **DENIED.**

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Slaughter has not made a substantial showing of the denial of a federal constitutional right.

**SO ORDERED** this 14th day of June, 2013.


_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE